STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-576

Apr 6  3 37 PM '01 REC-CUM-4/6/2001

WAYNE M. JOHNSON and
ROYAL RIVER CORP.,

        Plaintiffs

        v.

HAYES E. GAHAGAN, individually,
HAYES E. GAHAGAN d/b/a
GAHAGAN & ASSOCIATES and
AROOSTOOK ENERGY CORP.,

        Defendants

**ORDER ON DEFENDANTS'
MOTION TO DISMISS**

## FACTUAL BACKGROUND

On January 1, 1996, Plaintiffs Royal River Corporation ("RRC") and Wayne Johnson, RRC's president, and Defendants Aroostook Energy Corporation ("AEC") and Hayes Gahagan, AEC's president, executed an Exclusive Representation Agreement for legal and financial consulting services for the Aroostook Starch Project. The contract was signed by Gahagan in both his individual and corporate capacities. The contract provided that Johnson was retained as senior legal and financial advisor to assist in both foreign and domestic negotiations and was for a term of six years. In a letter dated May 6, 1998, the Defendants indicated they would not pay Johnson's $106,603.26 bill.

On September 21, 2000, Johnson filed an 8-count complaint alleging he is entitled to relief on 20 independent legal theories in addition to seeking injunctive relief. The Defendants seek dismissal of the Plaintiffs' claim for breach of contract as

against Gahagan individually and all remaining claims as against all Defendants. For the following reasons, the Defendants' motion to dismiss is granted in part and denied in part.

## DISCUSSION

A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. Heber v. Lucerne-in-Maine Village Corp., 2000 ME 137, ¶ 7, 755 A.2d 1064, 1065. The material allegations of the Plaintiffs' complaint must be taken as true for purposes of this motion. See In re Wage Payment Litigation, 2000 ME 162, ¶ 3, 759 A.2d 217, 220. A dismissal must only occur if it appears "beyond a doubt that [the] plaintiff[s] [are] entitled to no relief under any set of facts that [they] might prove in support of [their] claim." Id. (quoting McAfee v. Cole, 637 A.2d 463, 465 (Me. 1994)).

I. **Tortious Breach of Express and Implied Contracts; Wanton, Wilful, Malicious and Negligent Failure to Pay Contract Fees; and Wrongful and Malicious Termination**

Count I of the Plaintiffs' complaint alleges, among other theories, that the Defendants tortiously breached the contract between the two parties. The Law Court has not recognized a cause of action for tortious breach of contract, however. Stull v. First American Title Ins. Co., 2000 ME 21, ¶ 14, 745 A.2d 975, 980 ("[T]ort recovery must be based on actions that are separable from the actual breach of contract."); see also Colford v. Chubb Line Ins. Co. of America, 687 A.2d 609, 616 (Me. 1996) (holding that for the plaintiff to secure emotional distress and punitive damages, he must

2

demonstrate that the defendant committed "independently tortious conduct beyond the denial of [the plaintiff's] disability claim"). Plaintiffs have therefore failed to state a cause of action on those theories.

## II. Intentional and Negligent Infliction of Emotional Distress

The Plaintiffs failed to allege sufficient facts to state either an intentional or negligent infliction of emotional distress claim (Counts VI & VII). To prevail on an intentional infliction of emotional distress claim, the Plaintiffs must present facts showing that the Defendants (1) intentionally or recklessly inflicted severe emotional distress or were substantially certain that such distress would result; (2) that the conduct was "so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community"; (3) that the Defendants' actions caused Johnson's emotional distress; and (4) that the emotional distress suffered was so severe that no reasonable person could be expected to endure it. See Champagne v. Mid-Maine Medical Center, 1998 ME 87, ¶ 15, 711 A.2d 842, 847. Breach of contract is not conduct that exceeds all bounds of decency. The Plaintiffs' allegations that the Defendants promised and then refused to pay on the contract therefore do not rise to the level of "outrageous."

The Plaintiffs have also failed to allege any emotional distress resulting from the Defendants' conduct. This element is essential to a claim of negligent infliction of emotional distress. See Cameron v. Pepin, 610 A.2d 279 (Me. 1992) (holding that a plaintiff must allege that the defendant was negligent, the plaintiff suffered severe emotional distress as a result of that negligence, and the emotional distress was a

3

reasonably foreseeable result of the defendant's negligence). The Plaintiffs have therefore also failed to state a claim for negligent infliction of emotional distress.

### III. Breach of Fiduciary Duty; Breach of Confidential Relations; Negligent Failure to Disclose; and Negligent Omission

In Counts I and II, the Plaintiffs allege breach of fiduciary duty and confidential relations, negligent failure to disclose and negligent omission. Because the Plaintiffs allege that the Defendants failed to disclose facts about the business and the Defendants' intention to employ Plaintiff Wayne Johnson's services without intending to pay for them, it appears the Plaintiffs have mislabelled the negligent omission and negligent failure to disclose claims and are actually claiming fraudulent misrepresentation. See Binette v. Dyer Library Ass'n, 688 A.2d 898, 903 (Me. 1996) (holding that omission by silence may constitute the supplying of false information for purposes of fraudulent misrepresentation).

The necessary predicate for both fraudulent misrepresentation and breach of fiduciary duty and confidential relations claims is the existence of a fiduciary relationship. See RESTATEMENT (SECOND) OF TORTS § 874 (1965) ("One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation."); Diversified Foods, Inc. v. First Nat'l Bank of Boston, 605 A.2d 609, 614 (Me. 1992) (holding that the existence of a confidential relationship imposes fiduciary duties on the "superior" party); Binette, 688 A.2d at 903 (requiring the existence of a fiduciary relationship when a plaintiff alleges fraudulent misrepresentation based on a defendant's omission by silence).

4

A fiduciary, or confidential[1], relationship requires "the actual placing of trust and confidence in fact by one party in another," and "a great disparity of position and influence between the parties to the relation." Bryan R. v. Watchtower Bible and Tract Society of New York, 1999 ME 144, ¶ 19, 738 A.2d 839, 846. The Plaintiffs have failed to establish the existence of a fiduciary relationship. The complaint and attached documents do not indicate a great disparity of position and influence. In fact, the contract reflects that the parties stood on equal footing.[2]

IV.    Civil, Constructive and Equitable Fraud; Deceit

The Plaintiffs have failed to plead fraud (Counts I & V) with particularity. See M.R. Civ. P. 9(b). A complaint alleging fraud must specify "the time, place and content of an alleged false representation, but not the circumstances or evidence from which the fraudulent intent could be inferred." Cutler v. Federal Deposit Ins. Corp., 781 F.Supp 816, 818 (D. Me. 1992). The Plaintiffs alleged that the Defendants fraudulently induced Johnson to spend substantial time and money to provide professional services to the Defendants while never intending to pay. The Plaintiffs also alleged that material misrepresentations were made regarding the contract, that

---

[1] Fiduciary and confidential relationships are the same and give rise to the same duties. Stewart v. Machias Savings Bank, 2000 ME 207, ¶ 11 n.1, 762 A.2d 44, 46 n.1.

[2] The Contract, Ex. 1 at 1, provides that Johnson had

> substantial experience with law, investment banking, equity and debt placements, mortgage banking and brokerage, real estate brokerage, real estate and commercial development, property management, financial consulting, collateralized obligations, conventional and government backed loans, securities, private placements, broker dealer compliance, due diligence, mediation, fact finding and other related activities and services . . . .

5

Gahagan urged Johnson to open an office in Washington D.C. and Gahagan instructed Johnson to threaten legal action against a Finnish company for alleged violations of the Defendants' contractual rights that Gahagan knew to be untrue. These allegations are extremely vague and do not allege the time, place and content of the alleged fraudulent acts.

## V.    Negligent Misrepresentation

Count V of the Plaintiffs' complaint alleges negligent misrepresentation. Except for allegations regarding Defendant Gahagan's instruction to Johnson to threaten legal action against a Finnish company, the Plaintiffs have not alleged that the Defendants supplied false information to guide Johnson in his business transactions. See Chapman v. Rideout, 568 A.2d 829, 830 (Me. 1990) (holding that the tort of negligent misrepresentation requires (1) a defendant to have supplied false information, (2) of a material fact, (3) to guide the plaintiff in his business transactions, (4) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information, and (5) the plaintiff justifiably relied upon the information as true and acted upon it, causing him economic loss). Although the Plaintiffs did allege misrepresentations regarding a Finnish company's violation of the Defendants' contractual rights, they do not allege that Johnson acted upon the information or suffered economic harm as a result. This omission is fatal to the Plaintiffs' negligent misrepresentation claim.

## VI.    Interference with Advantageous Commercial Business Relationship

Count I contains an allegation of interference with advantageous commercial

relationship. To state an interference with advantageous relationship claim, a plaintiff must allege the existence of a valid contract *with a third party*, interference with that contract by the defendant through fraud or intimidation, and damages proximately caused by the interference. Petit v. Key Bank of Maine, 688 A.2d 427, 430 (Me. 1996). The Plaintiffs have failed to allege any facts supporting this claim.

## VII. Slander and Defamation

The Plaintiffs have failed to state a claim of defamation (Count I). The elements of defamation include (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Chandler v. Cole, 2000 ME 104, ¶ 5, 752 A.2d 1189, 1193. The Plaintiffs failed to allege that the statements were published. See id. ¶ 17, 752 A.2d at 1197 (publication refers to any communication by the defendant to a third party).

## VIII. False Light

Count I of the Plaintiffs' complaint contains an allegation of false light. A person is liable for publicity placing another in a false light if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." Id. Publicity means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially

certain to become one of public knowledge." Id. (quoting RESTATEMENT (SECOND) OF TORTS § 652D cmt. a (1977)). The Plaintiffs have failed to allege anywhere in the complaint that any statements placed Johnson in a false light or that such statements were made to a large number of persons.

## IX. Hindrance

The Plaintiffs inappropriately alleged the doctrine of hindrance in Count I of the complaint because it is an affirmative defense to a breach of contract claim. See, e.g., Diversified Foods, 605 A.2d at 616 (doctrine of prevention or hindrance pled as an affirmative defense by counterclaim defendant). See also RESTATEMENT (SECOND) OF CONTRACTS § 225 cmt. b (1979) (stating that the nonoccurrence of a condition of a duty is excused by "prevention or hindrance of its occurrence through a breach of the duty of good faith and fair dealing").

## X. Breach of Implied Covenant of Trust and Confidence

Although Count III alleges that the Defendants breached an implied covenant of trust and confidence, the Law Court has never recognized any such cause of action.

## XI. Breach of Covenant of Good Faith and Fair Dealing

The implied covenant of objective good faith is applicable only to specific types of contracts between merchants as established by the Uniform Commercial Code. Niedojadlo v. Central Maine Moving & Storage Co., 1998 ME 199, ¶ 7, 715 A.2d 934, 936 (holding that an employment agreement between the two parties does not fall within the class of contracts governed by the U.C.C.'s implied covenant of

8

good faith). The Law Court has specifically refused to extend the application of the implied covenant of good faith in cases not subject to Maine's U.C.C. Id. ¶ 10, 715 A.2d at 937; see also First NH Banks Granite State v. Scarborough, 615 A.2d 248, 250 (Me. 1992). Because the Uniform Commercial Code does not govern the Defendants' conduct, the Defendants could not have breached the implied covenant of good faith and fair dealing alleged in Count IV.

## XII. Violation of Maine Unfair Trade Practices Act

The Plaintiffs alleged violation of the Maine Unfair Trade Practices Act ("UTPA") in Count IV. The Plaintiffs' failure to allege that anything was purchased or leased from the Defendants for personal, family or household purposes is fatal to the UTPA claim. See 5 M.R.S.A. § 213 (Pamph. 2000).

## XIII. Doctrine of Forbearance

The Plaintiffs have failed to allege facts to support a cause of action based on forbearance (Count I). The doctrine of forbearance requires a request of forbearance by the promisor, the promisee's promise to forbear, and forbearance by the promisee. Zip Lube, Inc. v. Coastal Savings Bank, 1998 ME 81, ¶ 8, 709 A.2d 733, 735. Johnson alleges that he was induced by Gahagan's promises of progress payments to give up other business and not to seek other business. Neither the complaint nor the contract reflects that Johnson promised to give up other business or forego seeking other business, however.

## XIV. Unjust Enrichment

To survive the Defendants' motion to dismiss the unjust enrichment claim

(Counts I & III), the Plaintiffs must allege that (1) a benefit was conferred on the Defendants, (2) the Defendants had appreciation or knowledge of the benefit, and (3) retention of the benefit without payment of its value was inequitable. See June Roberts Agency, Inc. v. Venture Properties, Inc., 676 A.2d 46, 49 (Me. 1996). The existence of a contract does not preclude the Plaintiffs from pleading both breach of contract and unjust enrichment. See id. at 49 n.1. The Plaintiffs' 22-page bill reflecting a $106,603 balance due establishes that substantial benefits were conferred upon the Defendants. The allegations that Johnson travelled to Washburn, Maine to report on the progress of the Defendants' negotiations to purchase a processing facility as well as allegations that Gahagan called Johnson's home late at night to request services and advice also support the Defendants' receipt of a benefit. That Gahagan made representations to an official of a DuPont Corporation affiliate about Johnson's services reflects the Defendants' knowledge and appreciation of the benefit conferred. The Plaintiffs have therefore alleged sufficient facts to support a claim of unjust enrichment.

## XV.  Breach of Contract

The Plaintiffs allege in Count I that the Defendants breached the contract entered into between the two parties on January 1, 1996. The Defendants have moved to dismiss this claim as to Gahagan individually because they argue that Gahagan has no obligation since no benefit is conferred on him and no duty is imposed on him under the terms of the contract. Johnson argues that extrinsic evidence supports his allegation that Gahagan personally obligated himself to pay

10

on the contract.

The parol evidence rule excludes extrinsic evidence offered to "alter, augment or contradict the unambiguous language of an integrated written agreement" from the Court's consideration. Handy Boat Service, Inc. v. Professional Services, Inc., 1998 ME 134, ¶ 11, 711 A.2d 1306, 1308-09; see also RESTATEMENT (SECOND) OF CONTRACTS § 213 (1979). Initially, to apply this rule, the Court must find that "the parties intended the writing to integrate their understandings concerning the subject matter of the agreement." Handy Boat, 1998 ME 134, ¶ 11, 711 A.2d at 1309. This contract is an integrated agreement because it constitutes a final expression of one or more terms of the agreement. See RESTATEMENT (SECOND) OF CONTRACTS § 209(1) & (3).

Just because the contract is final as to some matters does not mean it is a completely integrated agreement. See id. § 210 cmt. a. A completely integrated agreement is one adopted by the parties as an exclusive statement of the terms of their agreement. Id. § 210(1). In the absence of an integration clause, an examination of only the contract is inappropriate to determine whether the agreement was completely or partially integrated; instead, this Court should inquire into the circumstances bearing on the intention of the parties, taking into consideration the agreements and negotiations leading up to the contract. See id. §§ 210 cmt. a & 214(b); see also Handy Boat, 1998 ME 134, ¶ 11, 711 A.2d at 1309 (determining that whether the scope of integration is complete or partial may include a consideration of extrinsic evidence where the agreement is ambiguous

11

with respect to the scope of integration); <u>Interstate Indus. Uniform Rental Serv., Inc. v. F. R. Lepage Bakery, Inc.,</u> 413 A.2d 516, 519 (Me. 1980) (considering agreements and negotiations of the parties leading up to the integrated writing).

This contract may not be a completely integrated agreement. The contract fails to establish, for example, whether Johnson was required to work exclusively for AEC, to whom he was required to report, the location of his office, or whether he was to contribute to his insurance coverage. The contract also does not contain an integration clause.

The Plaintiffs have argued that Gahagan obligated himself personally with a memorandum from Gahagan to Johnson dated June 1, 1996[3] as well as Gahagan's verbal assurances of payment. Because the contract may not be fully integrated, extrinsic evidence may be considered by the Court only if it is consistent with the contract. <u>See</u> RESTATEMENT (SECOND) OF CONTRACTS §§ 213(1) & 216(1). The determination of whether the additional terms are consistent or inconsistent requires an interpretation of the contract in light of all the circumstances, including consideration of the extrinsic evidence. <u>See id.</u> § 216 cmt. b.

The contract expressly provides that AEC will pay the Plaintiffs' salary, provide insurance and pay all reasonable expenses and that Johnson was to serve as legal and financial advisor for AEC. The Plaintiffs have alleged that Gahagan repeatedly made representations that he would pay the Plaintiffs with money

---

[3] The Court has not considered this memorandum in deciding the motion to dismiss because the Plaintiffs have failed to allege its existence in, or attached the document to, the complaint. <u>See In re Wage Payment Litig.,</u> 2000 ME 162, ¶ 3, 759 A.2d 217, 220.

obtained from a friend and/or other contributors and investors. The Plaintiffs have also alleged that Gahagan, by repeated verbal assurances, personally guaranteed payment for Johnson's services and made continuous representations regarding progress payments. These allegations are consistent with the contractual language stating that the agreement was between Gahagan, AEC, Johnson and RRC. The allegations supplement and may also explain Gahagan's signature in his individual capacity. Because the contract and additional consistent terms support the Plaintiffs' allegations that Hayes Gahagan is individually bound by the contract, dismissal as to Gahagan individually on the breach of contract claim is inappropriate.

## XVI. Damages

A party seeking to recover damages for emotional distress arising out of a breach of contract must prove either accompanying physical injury or that the contract was such that breach would result in serious emotional disturbance. Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 651 (Me. 1993). Examples of such contracts include contracts between carriers and innkeepers and their passengers and guests, contracts for the carriage of dead bodies and contracts for the delivery of messages concerning death. McAfee v. Wright, 651 A.2d 371, 373 (Me. 1994). Because the contract between the Plaintiffs and Defendants clearly does not fall within the above categories and the Plaintiffs have failed to allege physical injury, the Plaintiffs cannot recover damages for emotional distress arising out of any alleged breach.

The Plaintiffs also are not entitled to punitive damages for the remaining

unjust enrichment and breach of contract claims. A claim for punitive damages requires an underlying tort. See Drinkwater v. Patten Realty Corp., 563 A.2d 772, 776-77 (Me. 1989) ("No matter how egregious the breach, punitive damages are unavailable under Maine law for breach of contract . . . . "); see also Stull, 2000 ME 21, ¶ 15, 745 A.2d at 980-81 (holding that a plaintiff may not recover tort damages for an action that is purely a breach of contract). The survival of the Plaintiffs' unjust enrichment and breach of contract claims is accordingly limited to exclude recovery of punitive damages.

The entry is

Defendants' motion to dismiss Plaintiffs' claim for breach of contract as against Hayes Gahagan individually is DENIED.

Defendants' motion to dismiss Plaintiffs' claim for unjust enrichment as against all Defendants is DENIED.

Defendants' motion to dismiss all remaining claims is GRANTED.

Plaintiffs' remaining claims of unjust enrichment and breach of contract are limited to exclude recovery of punitive damages and damages for emotional distress.

Dated at Portland, Maine this 5th day of April, 2001.

Robert E. Crowley
Justice, Superior Court

14

Date Filed __09-21-00__ ___CUMBERLAND___ Docket No. ___CV 00-576___

County

Action ___CONTRACT___

WAYNE M. JOHNSON
ROYAL RIVER CORPORATION

HAYES E. GAHAGAN, Individually
HAYES E. GAHAGAN, dba GAHAGAN & ASSOCS.
AROOSTOOK ENERGY CORPORATION

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| ROBERT WALKER, ESQ<br>WAYNE M.JOHNSON, ESQ 829-2110<br>1C WALNUT HILL COMMONS<br>1 WALNUT HILL RD., NO. YARMOUTH ME 04097 | Seth Brewster Esq. (All)<br>One Portland Square<br>Portland, Maine 04101 |

| Date of Entry | |
|---|---|
| 2000<br>Sept. 25 | Received 09-21-00:<br>Complaint Summary Sheet filed.<br>Complaint with Exhibits 1,2,3, and 4 filed.<br>Motion Under Rule 89(b) - Visiting Attorneys filed.<br>Jury Fee $300.00 PAID. |
| "　　" <br> "　　" <br> "　　" | |
| Oct. 3 | Received 10-2-00.·<br>Summons filed showing officer's return of service on 9-26-00 upon Defendant Aroostook Energy to Hayes Gahagan. |
| "　" | Summons filed showing officer's return of service on 9-26-00 upon Hayes E. Gahangan. |
| "　" | Summons filed showing officer's return of service on 9-26-00 upon Defendant Hayes E. Gahangan d/b/a Gahagan & Assoc. |
| Oct. 03 | On 09/27/00:<br>As to Plaintiff's Motion under Rule 899b) - Visiting Attorneys;<br>The Court will reserve decision on this motion at this time until service has been made and until defendants have appeared.  At that time plaintiffs may refile this motion and provide with more detail as to the business relationship betwen Mr. Johnson and Mr. Walker since the same business address and telephone numbers appear for both.<br>on 10/03/00 copy mailed to Robert and Wayne Johnson, Esqs. |
| Oct. 19 | Received 10/17/00:<br>Defendant's Motion to Enlarge Time to Respond to the Complaint filed. |
| Oct. 24 | Received 10-23-00.<br>Order filed. (Crowley, J.)<br>Defendant's motion to enlarge time to answer the complaint is granted.<br>Defendants shall serve their answer or response to the complaint on or |