STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV06-238
                                                  RAC -CUM- - /2 : /2006

RICHARD HALL

                    Plaintiff
DONALD L. GARBRECHT
            LAW LIBRARY

         JAN 17 2007

                                                  ORDER ON DEFENDANTS'
                                                  MOTION TO DISMISS
                                                  COUNT II OF PLAINTIFF'S
                                                  COMPLAINT

v.

STATE OF MAINE
Cumberland, ss, Clerk's Office
    SUPERIOR COURT

     DEC 20 2006

RECEIVED

UNUM-PROVIDENT CORP. et al.

                    Defendants

This case comes before the Court on Defendants' Motion to Dismiss Count

II of Plaintiff's Complaint pursuant to M.R. Civ. P. 12(b)(6).

## BACKGROUND

Plaintiff Richard Hall ("Hall"), bought long-term disability insurance from

Defendant Provident Life and Accident Insurance Company ("Provident") in

1985. Provident Life is a Tennessee-based corporation; Defendant

UnumProvident ("Unum") is its parent corporation and is incorporated in

Delaware. One of its "primary operations centers" is based in Portland, Maine.

Hall kept his Provident disability policy current until 2005, when he became

disabled. The policy's terms were that Hall would receive $1,800 per month

should he become and remain disabled.

For the previous five years, Hall had worked for Unum in Portland as a

vocational rehabilitation counselor. Hall contends that he suffers from an

"insidious cognitive impairment," and that he had asked the company to

1

"institute reasonable accommodations" to help him, which it did.[1] But, his condition worsened with time, making him unable to complete his duties at work, and he was ultimately terminated. After losing his job, Hall sought disability benefits under his policy. Unum denied Hall's claim.

In April 2006, Hall filed a complaint against both Unum and Provident, alleging breach of obligation to provide disability benefits, breach of regulatory settlement agreement, fraud, intentional infliction of emotional distress, violation of Maine's Unfair Claims Settlement Practices Act, and tortious interference with contractual relationships. Unum and Provident filed a motion to dismiss Count II, which alleges breach of a regulatory settlement agreement ("RSA"). The RSA resulted from an investigation by insurance bureaus into claims practices in 2003, which culminated in a plan of corrective action to be implemented by the RSA. Unum and Provident contend that the RSA does not create a cause of action for private individuals; instead, it is to be enforced by regulators.[2] Hall counters that, as a policyholder of a company that signed the agreement, he is a third-party beneficiary of the RSA and is entitled to bring suit to enforce it.

## DISCUSSION

### 1.    Standard of Review

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. Because the Court reviews the complaint in the light most favorable to the plaintiff to ascertain whether it properly sets forth elements of a cause of action, "the material allegations of the complaint must be taken as admitted." *Id.* ¶ 5, 707 A.2d at 85. The Court should

---

[1] Plaintiff's Complaint, p. 1-2, ¶¶ 2-4.
[2] Defendants' Motion to Dismiss, p. 2.

2

dismiss a claim only "when it appears 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (citations omitted).

    2.    <u>Is Hall a Third-Party Beneficiary to the RSA Who Is Entitled to Enforce It?</u>

The threshold question is whether Hall may bring an action to enforce the provisions of the RSA. He claims that he is an intended third-party beneficiary to the agreement and is entitled to sue under its regulatory scheme. Provident claims that the agreement was intended to address regulatory concerns, not to provide a private right of action, and that any benefit to Hall was incidental.

The Regulatory Settlement Agreement was reached in November 2004 after a multi-state investigation of several insurance companies whose parent corporation is UnumProvident. Specifically, insurance bureaus investigated the fairness of disability claim processing. The investigation revealed problems with the use of in-house medical professionals, "unfair construction of attending physician or IME reports," and improper placement of a burden of proof on claimants, among other issues.[3] Regulatory authorities addressed these concerns through a corrective plan, which included reassessing some claims that arose prior to implementation of the RSA.[4] The RSA was entered into by each company with the lead regulator in its state of incorporation.

Among other provisions, the RSA creates a Regulatory Compliance Committee and provides for regular audits of the reassessment process. It also invests lead regulators with broad powers to ensure compliance with the

---

[3] See Investigation Report prepared by Rackemann, Sawyer & Brewster, pp. 6-8.
[4] This would not include Hall's claim, which was filed in 2005. The reassessment program affected claims between January 1, 1997 and the effective date of the RSA in 2004.

3

changes to overall claims procedures. In its "remedies" section, the RSA sets forth a schedule of fines, and also provides that companies would receive large punitive fines in the event of future noncompliance. Lastly, the RSA explicitly states that it is to be governed by Tennessee law and applicable federal law.

To address Hall's claim that he is a third-party beneficiary, this Court must examine Tennessee's approach to contract enforcement. The Tennessee Supreme Court has stated that "contracts are presumed to be 'executed for the benefit of the parties thereto and not third persons.'" *Owner-Operator Ind. Drivers Assn., Inc. v. Concord EFS, Inc.*, 59 S.W.2d 63, 68 (Tenn. 2001) (citation omitted). Yet, third parties may sue to enforce an agreement "if they are intended beneficiaries;" a contract that only incidentally benefits another party, however, does not create a right to sue. *Id.* Determining whether a beneficiary is intended to benefit or only incidentally benefits necessarily involves examining the intent of the parties. *Id.* at 70.

*Owner-Operator* involved truck drivers who sued to enforce contracts prohibiting credit surcharges, which they claimed the defendants violated. *Id.* at 65. The drivers contended that they were third-party beneficiaries of the creditors' anti-surcharge contracts; they were not actual parties to the agreements. *Id.* at 66-67. After doing its best to clarify the distinction between intended and incidental benefits, that court held that the drivers were not intended beneficiaries and could not bring an action to enforce the contracts. *Id.* at 73. The court reasoned that even though the drivers would gain a derivative benefit from the elimination of surcharges, the creditors' contract was intended to benefit the creditors themselves; it was not meant to assist cardholders. *Id.*

4

Similarly, the RSA was not intended to directly benefit Hall, who was not a party to the agreement. Although Hall, like the drivers who benefited from the no-surcharge deal in *Owner-Operator*, may derive some general benefit from the agreement in that it was designed to improve the company's disability claim evaluation practices, he was not an intended beneficiary. Like the Tennessee court, this Court must examine the reason for which the RSA was created in order to determine the parties' intent. The RSA was clearly meant to address potentially unfair claims practices through an elaborate regulatory system, and the remedies specified were intended to operate only within that system of industry regulation. Unum and Provident correctly note that there is a palpable difference between deriving some benefit from a contract and being an intended beneficiary who can bring legal action to enforce the general benefit. Hall does not fall into the latter category and is ineligible to bring suit to enforce the RSA.[5]

The entry is:

Defendants' motion to dismiss Count II is GRANTED. Judgment is entered for Defendants on the claim for breach of regulatory settlement agreement.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

DATE: _____

Roland A. Cole
Justice, Superior Court

---

[5] Hall brings to this Court's attention a recent decision from an Arkansas federal court, which allowed a plaintiff to amend her complaint to include a count for breach of the RSA. *Jones v. Unum Life Ins. Co.*, 2006 U.S. Dist. LEXIS 87384 at **11-12 (E.D. Ark. Nov. 29, 2006). The federal court merely stated that Jones alleged a "cognizable claim;" the Court was not evaluating her argument on a motion to dismiss. *Id.* In addition to this procedural difference, *Jones* is also distinguishable because the plaintiff submitted a disability claim in 1999, bringing her within the applicable time period under the RSA, 1997 to 2004. *Id.* at *3. As stated above, Hall's claim under the RSA is not within that category because his denial of benefits occurred in 2005.

< OF COURTS
)erland County
O. Box 287
Maine 04112-0287

JON HOLDER ESQ
PO BOX 238
ELLSWORTH ME 04605

OF COURTS
rland County
Box 287
aine 04112-0287

RONALD SCHNEIDER ESQ
PO BOX 9729
PORTLAND ME 04104